N8GDMESA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          23 Cr. 418 (DLC)

GINA MESTRE,

                                      Arraignment
          Defendant.

------------------------------x

                                      New York, N.Y.
                                      August 16, 2023
                                      2:30 p.m.

Before:

                    HON. DENISE COTE,

                                      U.S. District Judge

                      APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DOMINIC A. GENTILE
JAMES LIGTENBERG
    Assistant United States Attorney

MATTHEW J. KLUGER
    Attorney for Defendant

Also Present:

Myles McKenna, N.Y.P.D.
Dayshawn Bostic, U.S.P.O.

1        (Case called; appearances noted)

2        THE COURT:  Thank you.

3        I will take a report from the government.

4        MR. GENTILE:  The defendant was arrested yesterday at
5    5:30 p.m. in Westchester County.  She's charged with four
6    counts:  Racketeering conspiracy, conspiracy to obstruct
7    justice; conspiracy to obstruct an official proceeding, and
8    accessory after the fact to murder in aid of racketeering.

9        If the Court would like, I can provide an overview of
10   the case and some background.

11       THE COURT:  No.  It's not necessary.

12       When was the indictment?

13       MR. GENTILE:  The indictment was yesterday.

14       THE COURT:  So the indictment was filed yesterday?

15       MR. GENTILE:  It was, your Honor.  Yes.

16       THE COURT:  Was there a previous arrest on the
17   complaint?

18       MR. GENTILE:  No, there wasn't, Judge.

19       THE COURT:  This is the defendant's first appearance
20   in court?

21       MR. GENTILE:  It is, your Honor.

22       THE COURT:  Thank you.

23       So I'll proceed with an arraignment.

24       Please stand.

25       Ms. Mestre, have you received a copy of the

1   indictment, 23 CR 418?

2   THE DEFENDANT:  Yes, ma'am.

3   THE COURT:  Do you wish me to read it to you?

4   THE DEFENDANT:  No, ma'am.

5   THE COURT:  How do you plead:  Guilty or not guilty?

6   THE DEFENDANT:  Not guilty.

7   THE COURT:  You may be seated.

8   I'm signing an order pursuant to Rule 5(f).

9   I advise the government in the presence of defense
10  counsel of its obligations pursuant to Rule 5(f), as detailed
11  in the order I've just signed, which will be docketed.  A
12  failure to abide by its obligations pursuant to that order, and
13  pursuant to *Brady* and its progeny, may result in any number of
14  consequences that are just under the circumstances.

15  Mr. Gentile, did you hear what I just said?

16  MR. GENTILE:  I did, your Honor.

17  The government is aware of its obligations under *Brady*
18  and its progeny, and will comply with those obligations as they
19  arise.

20  THE COURT:  Thank you.

21  So, normally, I have a chance to issue a scheduling
22  order, and the parties have a chance to confer in advance of
23  today's conference or of the conference in which defendant is
24  arraigned about scheduling of the case, including the month
25  that I should be looking at for a trial.

1            Have the parties so conferred?

2            MR. GENTILE:  We have, your Honor.

3            THE COURT:  Good.  So let me proceed then with other
4    preliminaries.

5            No time has expired under the Speedy Trial Act, except
6    potentially for one day, but I don't think that at all, so my
7    calculation currently is zero days have elapsed on the Speedy
8    Trial clock.

9            MR. GENTILE:  That's correct, your Honor.

10           THE COURT:  What is the government's proposal for
11   producing discovery materials?

12           MR. GENTILE:  Your Honor, there are essentially two
13   tranches of materials that the government will produce to the
14   defendant.  The first tranche involves the enterprise, the
15   Shooting Boys, in which we allege that the defendant was
16   associated.  That case culminated in an indictment that was
17   heard in front of Judge Rakoff back in March of 2022.  That
18   case encompassed close to two terabytes of information in that
19   case, and in the subsequent case that was brought against other
20   members of the Shooting Boys.  Government and defense counsel
21   employed a discovery coordinator in both cases.

22           The discovery coordinator is in possession of all of
23   the government productions in both of those cases, and could
24   produce that material to the defendant rather quickly should
25   the defendant wish to go forward with the discovery coordinator

in this case.  That's the first tranche of information.

The second tranche is the information specific to defendant's conduct and actions that are alleged in the complaint.  That comes to about 27 gigabytes of data we can begin to produce immediately, depending on how we proceed with whether we use the discovery coordinator or not.

THE COURT:  Mr. Kluger, have you had a chance to reflect on these issues?

MR. KLUGER:  To be completely honest, your Honor, obviously I was here this morning.  I've only had the case for a couple of hours.  I'm trying to learn as much as we can about it.  I don't necessarily think we need a discovery coordinator. It's just me on this case.  I understand there's a lot of discovery, but a discovery coordinator would probably just delay the turning over of that discovery.

But it does sound voluminous.  I'm not in a position yet to say how long it's going to take me to get through it.  I don't generally take a huge amount of time.  I want to move things along, but I have two terabytes of information.  I have a lot of information, and I don't necessarily know what motions need to be decided or are appropriate yet.

It's still a little -- as your Honor pointed out before, usually we have a couple weeks to come in before we set a trial schedule --

THE COURT:  Well, I'm sort of asking a different

Case 1:23-cr-00418-DLC   Document 9   Filed 09/01/23   Page 6 of 17      6
N8GDMESA

question.  Mr. Gentile has said one issue you have to decide is whether to use a discovery coordinator or not.

Do you know yet what your position is on that issue?

MR. KLUGER:  In this particular case, since the discovery coordinator already has discovery, it shouldn't slow things down, so it would probably make sense to use the same -- if I could ask the government who the discovery coordinator was in the case?

MR. GENTILE:  Julie D. Alameda.

MR. KLUGER:  Right.  So she's fairly familiar with the court, and I know her, so if she already has the discovery in the other case, she should be able to get it to me fairly quickly.

THE COURT:  All right.  So understanding Mr. Kluger is going to use the services of the discovery coordinator to obtain at least the enterprise discovery, what is the government's proposal on timing?

MR. GENTILE:  For the discovery coordinator, that should go out within the next two days, actually, but I believe the discovery coordinator requires a drive be sent to them by defense counsel, so whatever time that takes, the discovery coordinator should be able to produce the first tranche of information.

The second tranche would have to be produced to the discovery coordinator, and, in turn, she would produce it to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    the defendant.  We would ask the Court for about 14 days to
2    produce that second tranche of information.
3             THE COURT:  So I'm going to say September 1 for
4    production of discovery.
5             Mr. Gentile, you may need to get me an appropriate
6    order with respect to the use of the discovery coordinator in
7    this case.
8             MR. GENTILE:  Your Honor, I believe that is actually
9    provided by defense counsel, but we're happy --
10            THE COURT:  Okay.
11            MR. GENTILE:  -- to follow whatever directions --
12   because I believe the coordinator actually works for the
13   defendant.
14            THE COURT:  Well, it does, yes.  The coordinator works
15   for defense counsel.
16            So I have no idea what order Judge Rakoff signed, but
17   the government probably has access to that order that Judge
18   Rakoff signed.
19            Am I right?
20            MR. GENTILE:  Yes.  We're in possession of that.
21            THE COURT:  All right.  Can you give that to
22   Mr. Kluger, too, please?
23            MR. GENTILE:  Certainly, Judge.
24            THE COURT:  So, Mr. Kluger, I have my own form for
25   discovery coordinator.  I'll try to get you a proposed order.

1   You'll have a copy of Judge Rakoff's order, and you can make
2   any proposal you wish to make with respect to modifications of
3   my proposed order.
4              MR. KLUGER:  That's fine, Judge.
5              THE COURT:  How long does the government expect the
6   trial to last?
7              MR. GENTILE:  We would say that two weeks would be a
8   safe assumption, Judge.
9              THE COURT:  What would be the principal sources of the
10  government's evidence at trial?
11             MR. GENTILE:  So we are in possession of -- in
12  addition to that first tranche of information about the
13  enterprise, we have 26 responses from subpoenas for cell
14  phones, or the call records for those phones, including some
15  cell site data.  We have returns for social media accounts, for
16  Instagram and Facebook, approximately four accounts.
17             THE COURT:  I'm asking what the principal sources of
18  the government's evidence at trial would be, not what discovery
19  you're going to produce.
20             MR. GENTILE:  The principal sources of evidence would
21  be statements that the defendant made over the course of 6 or 8
22  months in Instagram communications, in text messages, testimony
23  from cooperating witnesses, multiple cooperating witnesses, and
24  testimony from law enforcement witnesses as well.  That would
25  be the principal source of the government's evidence.  And I

1  would also add, Judge, statements that the defendant made
2  during an interview with federal investigators back in March of
3  2022.
4          THE COURT:  So, Mr. Gentile, you told me that the
5  parties had discussed a schedule for trial, and what is the
6  proposal?
7          MR. GENTILE:  I'm sorry, Judge.  We didn't specify an
8  actual date.  We were speaking more along the lines of how long
9  the defense would need for reviewing discovery, and then
10 possible dates after that.
11         As far as the government's concerned, we are ready to
12 proceed to trial as soon as after discovery is reviewed and
13 motions are made.
14         THE COURT:  Thank you.
15         So can you consult with Mr. Kluger now, and give me a
16 month for a trial date?
17         MR. GENTILE:  Sure.
18         MR. KLUGER:  Judge, can we get a sense from the Court
19 what the Court was thinking, so we have kind of a benchmark?
20         THE COURT:  Well, Mr. Kluger, I'll let you figure that
21 out.  I try to accommodate anything that's reasonable that
22 counsel asks, I'll try to accommodate.
23         MR. KLUGER:  Thank you, Judge.
24         THE COURT:  Counsel.
25         MR. GENTILE:  Your Honor, we have conferred.  The

parties would suggest early 2024 sometime?  January?

            THE COURT:  So I have a two-week criminal trial starting January 16.  Of course it's impossible to know if that will go forward.  I can start this case on January 2nd, or January 9th, or January 30th.

            MR. GENTILE:  January 2nd, or January 9th works for the government, Judge.

            THE COURT:  Mr. Kluger?

            MR. KLUGER:  The 9th is preferable, but I don't know what --

            THE COURT:  Great.

            MR. KLUGER:  All right.

            THE COURT:  Mr. Kluger, since this trial is set for January, and I want to give you a chance to focus on the discovery material for as long as possible, and I'm expecting the government will assist you by pointing to those portions of the evidentiary record that they think are most relevant to your client -- you'll have it all, but they'll I'm sure assist you in speeding that review to the extent they can.  So I'm going to suggest a motion schedule that's a bit tighter than I would otherwise suggest, with the understanding that you can write to me at any time and ask for a change to the schedule to bring motions more quickly.

            So I'm going to suggest that defense motions be due November 17, government's response will be due December 1, and

1  that will give us an opportunity for any hearing, if one is
2  necessary at some point that's convenient to one and all in
3  December.
4       So, Mr. Kluger, I've been handed a financial
5  affidavit.  I'm going to ask your assistance here, since this
6  is not something I normally handle myself.  It's usually
7  handled by a magistrate judge.  I believe it's appropriate for
8  me to place the defendant under oath with respect to the
9  information on the financial affidavit, and review it, and
10 approve it or not as appropriate.
11      MR. KLUGER:  Yes, Judge.  That's correct.
12      THE COURT:  Does your client need to see the financial
13 affidavit again to swear to its truth?
14      MR. KLUGER:  No, your Honor.  We reviewed it carefully
15 already this morning.
16      THE COURT:  So, Ms. Mestre, please stand.
17      Please raise your right hand.
18      Do you solemnly swear that the answers you are about
19 to give to me with respect to the financial affidavit will be
20 true to the best of your knowledge?
21      THE DEFENDANT:  I do, your Honor.
22      THE COURT:  Do you swear to the truth of the contents
23 contained in your financial affidavit that was signed today?
24      THE DEFENDANT:  Yes, ma'am.
25      THE COURT:  Thank you.  You may be seated.

1                  I have reviewed this, and I approve it.

2                  MR. KLUGER:  Thank you, Judge.

3                  THE COURT:  Mr. Kluger, any objection to an exclusion

4     of time to until our trial date of January 9?

5                  MR. KLUGER:  No, Judge, not with the fact that I need

6     to review the voluminous discovery in this case, have

7     conversations with the government, as well as with my client

8     regarding any possible disposition, so we would consent to the

9     adjournment.

10                 THE COURT:  I'm going to exclude time under the Speedy

11    Trial Act from today until our trial date of January 9, 2024.

12    It will permit the defendant and her counsel to review the

13    discovery materials.  If the defendant wishes to plead guilty,

14    it will give counsel an opportunity to discuss that disposition

15    with each other.  If the defendant prefers to proceed to trial,

16    it will give her an opportunity, through counsel, to make

17    motions, to have those motions decided, and to have everyone

18    prepare for the January trial.  I make this exclusion pursuant

19    to Title 18, United States Code section 3161(h)(7)(A).

20                 Now, I want to advise you, Ms. Mestre, that the trial

21    date you just selected is firm.  It will not move.  If you come

22    into funds to retain counsel or if you decide to change

23    appointed counsel, you should make that application sooner,

24    rather than later, so that any incoming attorney has an

25    opportunity to be prepared for trial.

1        Do you understand what I just said, Ms. Mestre?
2        THE DEFENDANT:  Yes, ma'am.
3        THE COURT:  So I think the only thing further that I
4   need to do is to set a schedule for submission of expert
5   reports, and I'm going to have those expert reports due
6   December 22.
7        Mr. Gentile, anything else we need to do except bail?
8        MR. GENTILE:  No, your Honor.
9        THE COURT:  Thank you.
10       Mr. Kluger, anything else, except bail issues?
11       MR. KLUGER:  I don't -- other than bail, Judge, I
12  think we've covered everything.
13       THE COURT:  Good.  So let's turn to the issue of bail.
14  I think the pretrial services officer is here.  I have a letter
15  from the government with today's date, and I understand from
16  that letter that there is a proposal that the defendant be
17  released on bail pursuant to the terms described in that
18  letter.  I also have the pretrial services report, which has
19  slightly different recommendations for release.
20       The government's proposal is a $250,000 personal
21  recognizance bond, cosigned by two financially responsible
22  people; and it's secured by real property, which can include
23  the defendant's interest in that real property; travel
24  restrictions to the Southern and Eastern Districts of New York;
25  the surrender of all travel documents with no new applications;

1  supervision by pretrial services.  The pretrial services office

2  has that the defendant is not to possess a firearm, destructive

3  device, or other dangerous weapon; and that the defendant is to

4  have no contact with any alleged co-conspirators, victims, or

5  witnesses outside of the presence of counsel.

6         So that's the proposal or the combination of the two

7  proposals that I have.

8         Anything else, Mr. Gentile?

9         MR. GENTILE:  No, your Honor.

10         The only thing that we would draw the Court's

11  attention to is the condition provided by pretrial services

12  regarding no contact with witnesses.  We are under the

13  understanding that defendant maintains contact with several of

14  her law enforcement colleagues from the 52nd Precinct.  We

15  would request that that no contest rule extend to anybody who

16  she worked with in the 52nd Precinct.

17         THE COURT:  So I'm going to ask counsel to respond to

18  the following:  That the defendant not have any contact with

19  any current or former employee of the NYPD, other or outside

20  the presence of counsel.  So, it's broader than the

21  government's request.

22         Mr. Kluger, any objection?

23         MR. KLUGER:  If I could have a moment to speak?

24         THE COURT:  Yes.

25         MR. KLUGER:  Okay.  We have -- there's no objection to

1   that condition, Judge.

2   THE COURT:  Thank you.

3   With respect to the cosigners, is there an agreement
4   between the parties of how long the defendant has in order to
5   obtain those cosigners?

6   MR. KLUGER:  I think we had discussed, Judge, that
7   we'll have until next -- that defendant will be released on her
8   own signature today, and that we'll have until next Friday to
9   secure the paperwork, the house, and to secure the other two
10  financially responsible cosigners.

11  THE COURT:  Okay.

12  MR. KLUGER:  I don't know the date off the top of my
13  head.

14  THE COURT:  That would be the 25th.

15  MR. KLUGER:  Correct.

16  THE COURT:  So I'm going to give this form, the bail
17  disposition sheet, to counsel to review, and the pretrial
18  services officer.

19  I forgot to advise the defendant of her rights if she
20  hasn't been presented.  So, Counsel, when you're done, I need
21  to do that.

22  Counsel, any request for amendments?

23  MR. KLUGER:  Your Honor, the only thing we would draw
24  the Court's attention to is the provision that prohibits the
25  defendant's contact with present or former members of the NYPD.

1    It's our understanding that the defendant's partner is a former
2    member of the NYPD, so we would not expect that prohibition to
3    extend to her partner with whom she resides.
4              THE COURT:  What is the last name of that person?
5              MR. KLUGER:  Burke, Timothy Burke.
6              THE COURT:  B-u-r --
7              MR. KLUGER:  K-e.  Burke.  Timothy Burke.
8              THE COURT:  Thank you.
9              I'm going to ask the defendant to stand, so I can
10   advise her of her rights.
11             You have the right to remain silent.
12             You are not required to make any statements.
13             Anything that you do say can be used against you.
14             Even if you have made any statements to the
15   authorities, you need not make any further statements.
16             Do you understand these rights?
17             THE DEFENDANT:  Yes, ma'am.
18             THE COURT:  You have the right to be represented by
19   counsel during this court proceeding, any future court
20   proceedings, and any time you are questioned by the
21   authorities.
22             If you cannot afford an attorney, an attorney will be
23   appointed to represent you.
24             Do you understand that?
25             THE DEFENDANT:  Yes, your Honor.

N8GDMESA

1        THE COURT:  You may be seated.
2        Anything further, counsel?
3        MR. GENTILE:  Nothing from the government, your Honor.
4        MR. KLUGER:  Nothing from the defense, Judge.  Only to
5   note that we turned over Ms. Mestre's passport to pretrial
6   already, so that condition has been resolved.
7        THE COURT:  Thank you all.
8        MR. KLUGER:  Thank you, Judge.
9        (Adjourned)